Incorporated v. Diversi-Tech, 2007, 1492, and 1093. Mr. Zenger. Thank you, Your Honors. I have selected 11 minutes from my argument, and I'd like to reserve four for rebuttal. I would first like to thank you for hearing us today, and I'd just like to introduce Mr. John Anderson, who is the inventor of the patents in suit and also the primary of Anderson Manufacturing, and he thanks you also for hearing this case today. The record below is one in which the facts indicated that until Mr. Anderson had invented, had his patents issued, and put on the market— I mean, I can't find any notice of appeal in which you actually, even still today, which of course would be too late, but appeal the denial of the 099 preliminary injunction. Your Honor, we filed that notice on November 2nd, the day after the district court issued its November 1st report. Well, let's look at that notice. It's on page A574. Notice is hereby given that Anderson, plaintiff and above named case, appealed from the court's order denying plaintiff motion for reconsideration. Here's the problem, counsel. A motion for reconsideration is not appealable on an interlocutory basis. Only the actual reconsideration decision is not appealable on an interlocutory basis. It is only an actual denial, and this case highlights the reason for that difference. Because in fact, when you look at document number 104, which is the denial of the motion for reconsideration, the entire opinion is directed to the impropriety of you introducing new evidence. So what this tells me is you're appealing to me her decision that you couldn't introduce new evidence. It doesn't tell me you're appealing her earlier decision that your preliminary injunction should be denied for the reason she expressed orally in the record. So that's what I'm struggling with. Okay. Your Honor, the order that the court issued on November 1st was caused by an earlier order that the court had entered indicating that there was a misunderstanding about the scope of its July 2nd order. Because the facts go as follows. We had filed a motion for preliminary injunction, and it was heard initially in July of 2006. I don't want to go through all the facts. I mean, this is very precise. Notices of appeal have been construed by courts to require very precise pointing to exactly what is being appealed. And the overall fact pattern is compelling. I don't dispute that with you. But the law says I've got to focus on the important but ministerial process of figuring out exactly what you gave notice that you were appealing. And so let's focus. Are you going to suggest to me that something in docket number 104 expresses her denial of your underlying preliminary injunction for the 099? Yes, because it is the only document which the court issued an order regating a separate paper in which the court addressed the 099 patent. Okay. So let's look at that then. Show me where in that particular document it indicates the denial or even arguably indicates the denial. I'm looking on page A4. Is that where you are in the transcript? You want me to go to page A4? Okay. I'll go to page A4. Okay. On page A4, which is the court's November 1st order, it states, on June 24, 2007, the court ruled from the bench denying plaintiff's motion for reconsideration its prior ruling with regard to the 099 patent. And the prior oral ruling was? Motion denied. Hold on. On June 27, 2007, the court ruled from the bench denying plaintiff's motion to reconsider its prior ruling in accordance with that oral ruling. That oral ruling was motion for preliminary injunction denied. No. Actually, she specifies what it was. On June 27, 2007, the court ruled from the bench denying plaintiff's motion to reconsider. Yes, but there has never been a separate paper issued by the court denying the preliminary injunction on the 099 as required by Rule 58. Okay, but Rule 58 then says after 150 days, is it, that if there's no paper that the oral entry that's in the docket becomes, for all purposes, the written document. Is that right? Something like that? Yes. I've got to hear somewhere. Yes. So has that time expired? It certainly has now, ma'am. Yes. So now what happens? Look, I'm not disagreeing with you that it seems fundamentally unfair, but I have to apply the actual law. Okay. And even if in the circumstance it seems unfair, it seems like somebody along the way should have made sure they were appealing the right thing. Well, let me point out why I don't think it's a waiver in this case. First of all, the court issued a July 2, 2007, order denying plaintiff's motion for preliminary injunction. That is what the order says. If you'll look with me in the records at page A1. Okay, A1. And remember, what happened here was we had filed an earlier motion for preliminary injunction. The court had orally denied it. Okay, wait. Page A1. A1. This is the memorandum in decision denying your motion for a preliminary injunction on the 412 patent. It doesn't say that. It doesn't say that in the opening paragraph where it says it denies our motion because what happened was Judge Benson, he consolidated the hearings on the motions for preliminary injunction. In the opening paragraph, he argued both preliminary injunctions at the same time prior to this order coming out. And he says the request is denied. He talks only about the 412 patent. And, I mean, in the concluding paragraph, accordingly he's talking about your motion for preliminary injunction with regard to the 412 patent is denied. Exactly right. It's hard for me to – you agree with me, right, that you could file a consolidated motion that asks for 15 things, and the judge could choose to address each one in a different order and memorandum. He doesn't need to address every single one of them in the same order. Correct. Yes. So how do you tell me that this memorandum decision and the accompanying order put anyone on notice that he's speaking with regard to your 099 patent? Well, because the motions were heard together, we believe, and this statement says motion denied, that we believe that could have referred to both. We grant that the rest of the order only deals with the 412 patent. So what did we do? We timely appealed this order. And then the issue was raised by Diversatech that we only appealed the 412. And the court, in a subsequent order, explained that it was wrong, that it had not addressed this issue particularly, and said we will issue another order pertaining to the motion for preliminary injunction. Just before we get to this memorandum and decision dated July 2007, don't we have an oral transcript in which the district court resolves your 099 motion and says move on, I'll give you something in writing with regard to the 412. Isn't that, I mean, I'm obviously not quoting exactly, but don't we have a transcript in which she actually resolves, this is she I believe. Sorry. Judge Benson. Okay, sorry. Dee sent me, confused me a little. It's okay. Okay, so don't we have an oral discussion by the court from the bench where she believes she completely dispenses with your 099 preliminary injunction motion? And didn't we clean it up on November 2nd? That's what we understood the November 1st order to be, saying I'm getting it. That's what your argument should be. That's exactly the point, is because the court did clean it up in a subsequent memorandum order, saying I didn't address it in a separate paper and I, and I do now. And he did so on November 1st. In other words, you may have a technical deficiency early on, but it was finally settled. It was finally settled on November 1st and we appealed on November 2nd. 585, which is the very end of the appendix where you have judge Benson's order responding to a request for clarification. Yes, sir. Right down at the bottom where he says, therefore the minute order will enter a formal order where he says, denying plaintiff's motion to reconsider, he should have said denying plaintiff's motion for a PI and denying the motion to reconsider. And if he'd said that, there wouldn't be any issue, right? That's correct, sir. But this is. Are people afraid to tell judge Benson in his court that he needs to clean these things up? Is there sort of an end to all fear of my friend, judge Benson? No, but what you'll notice is that. This is sloppy. There's no question about that. It's, it could be clearer, but what did he do? Notice he filed not only this order on the first day of November, but also the other order denying the paper. And that was what everyone understood to be a separate order under rule 58, disposing of the 099 preliminary injunction. Hence we filed the next day and we believe that there was no waiver and that we're properly here. Proper jurisdiction. Um, with respect to, um, you challenged the merits of his decision, denying the preliminary. We do. And I want to, I want to take all of my arguments that I've made and the issues that I've raised and kind of wrap them all up into one small package because my time is short here, but I want to get to the heart of this matter. What it appears to us that the judge improperly did and was legal error and was based on a factually erroneous finding was that he relied on a prior art reference that was a design patent to apparently overcome a presumption of validity of a method patent when, and we believe that is legal error and that in doing so, in order to reach that conclusion, he relied upon, um, um, um, uh, factual erroneous findings in my, in my, is it against the law? Am I in my rebuttal period? You are in your rebuttal time, but, uh, we'll give you a couple of extra minutes. Thank you. Is it against the law to cite a design patent as prior art in a one Oh three analysis? No, sir. But we believe it was improper in this case because there was nothing in the design application that taught any of the critical elements of the method claim. The method claim expressly requires extruding aluminum to, to create a profile that is you push it out and make a big law. Even if your appeal was timely, one appeal was timely. The other one was certainly timely, but we have a very high standard of review here, right? So it's extremely hard for you to overcome that. Uh, how was there clear and substantial error? No reasonable basis for the trial court to, uh, deny the preliminary injunctions. Here's the reason the entirety of the presentation at prior art by counsel in the underlying case is found in the record at pages a 95 through 100 and a one Oh nine through a one 14. That was the entirety of the prior art representation to the trial court. And we showed to the trial court that every prior art reference cited by the examiners for the proposition they cited, namely aluminum was known and extrusion was known. The examiner had already dealt with all of those issues in the prosecution history. Patents aren't now being invalidated. The point is that you don't get a preliminary injunction, which is regarded as a quote, extraordinary remedy. And you have to fight that out at the trial court level. Right. But the, but the reason why we believe we should get the preliminary injunction and that the order should be reversed is the judge said, but for this invalidity question, I would grant the preliminary injunction. So he sided with us generally on infringement and irreparable harm. And he said, it appears to me that there is a question here. Now this court has stated what that standard is, that abuse of discretion standard. And it is, if there's a legal error or a clearly erroneous factual basis on which that decision was made. And our view is our position is a diversity tech presented prior art two or three pieces of prior art for the proposition that extrusion was known and industry of hitches, hitches and tow bars are entirely different things. And I'd like to address that if I can for a minute in a minute, but the examiner had already acknowledged that aluminum was known in the hitch industry and that extrusion was, was known. So the prior art that they presented was nothing new to overcome the presumption of validity. And so the only piece of prior art that was in any way different was this McCoy design application, which teaches nothing about extruding, nothing about machining and nothing about cutting. And we believe it's the McCoy design show. The McCoy design just shows the picture of a tow bar and it's front, backside, side, top and bottom views. It says nothing about aluminum. It says nothing about extruding machining or cutting. And so the picture of the tow bar got to be what it is. Because someone may have carved out of a block of steel. Someone may have cast it. It may have been cast in steel or iron or some, or some other product because what the, so my bottom line position is. It could have been extruded. But there's no, that's the point. There is no evidence in the record whatsoever that it was extruded. Maybe that's why you need a trial. In any event,  but we'll give you three minutes for a bottom up. Thank you, sir. Mr. McGinn. Thank you, Your Honors. May it please the court, this morning I would hope to address three main points. First is a jurisdictional question. And noting that the 099 appeal isn't properly before this court, and therefore it lacks jurisdiction. But there's no question about the other. The 412? Yes. Yes, Your Honor, that's correct. So why don't you deal first with the question of, of the appropriateness of overcoming the denial of preliminary injunction? Because that's in the case, irrespective of the timeliness of appeal on the other one, on the 099. As to the 412 patent, what that is directed to is an apparatus claim set that is directed to the particular, what is called in the industry a drop bar, where you have a higher portion, a lower portion, and that's what's used for towing. Now, the claim novelty of this particular invention is the fact that it is made out of aluminum. Now, at the preliminary injunction stage, in order to obtain a preliminary injunction, which, as you note, is an extraordinary remedy, the... Couldn't the district court leave off the extruded aluminum limitation in his analysis? Well, he didn't explicitly say he was finding extruded aluminum. You'll note, though, in the order, he did say an extruded aluminum tow bar. So, at the very least, we know it was, at least on his mind, he didn't say, this is where I found extrusion in the prior art, but he did say what this is dealing with, in one body, at least, an extruded aluminum tow bar. He copied the words of the claim when he was sort of discussing it more generally, but then when he was actually pointing to the prior art and what they disclosed, he never made mention of that important limitation, it seems. So, I guess, where is that? Why don't you tell me where it is, President? Certainly. Actually, the Cixaria reference does point not to a tow bar, not to a drop bar itself, but it does specifically reference using extruded aluminum for tow bar components. And, in addition, the prior... The district court had before it evidence, in fact, Mr. Anderson's deposition testimony, that the general extrusion process, you know, of extruding, machining, and cutting is extremely well known in the industry, and, in fact, testified that thousands of shapes can and have been made using this particular process and everything from aircrafts to fence posts were his words. And so the district court essentially had to make the jump from, well, I know that extrusion is very well known in the art. It's used to make thousands of shapes by Anderson's own admission. Here we have a particular shape, which is the drop bar shape. Would one of skill in the art be motivated to use this well-known process to make this particular well-known shape? And I believe that provides the district court sufficient evidence. What's the evidence that district court reached the conclusion that one of skill in the art would be motivated to make the combination? What's the evidence of record to support that conclusion? Well, the motivation to do so was implicit. Essentially, we're... Is this a sort of a post-TSR, judges get to make up the motivation facts? Well, I wouldn't characterize it that way. In the dive star case that this court handled, it did say that there can be an implicit motivation to combine, particularly in instances where you have a limited number of materials that would be suitable to a particular task. Excuse me. Let me interrupt you briefly. I think that's unforgivable to have a cell phone play music in the course of a court proceeding. I apologize. I thought it was fine. Sorry. Please continue. Certainly, Your Honor. I'm sorry. I believe I lost my train of thought there. I apologize. I apologize. We were talking about whether or not Judge Benson had anything in the record that would support. He didn't cite anything in his opinion. He said, here are these two facts, and one of ordinary skill in the art, I believe, would be inclined to make the combination. And if you make the combination, you've got a prima facie case of obviousness or something close to it, or at least the claims are vulnerable, and therefore you don't get your PI. I was simply trying to find out if there was, in the record, testimony of what one's skill in the art might do when confronted with the two pieces of art. Certainly. Well, what happened is an argument counsel presented evidence or argument to the district court judge indicating that essentially it's a natural progression to go from steel to aluminum, citing, for example, the instance of the automobile industry. So that counsel's argument was the evidence to support the combination? Yes, Your Honor. That doesn't work, does it? Certainly. Certainly can't work. I mean, lawyers can't stand up and say what one of skill in the art would be inclined to do. Certainly. Although at the preliminary injunction stage, typically the evidentiary standard is lessened because it tends to be at the front end of the case. And naturally at trial, we're likely, we point to have an expert to come in and testify and essentially bridge that gap and say this is why one of skill in the art would know to use this known process for this particular case. Well, we see cases all the time where somebody trots an expert up on the PI because they want to shore up a motivation to combine. Certainly. I don't believe it's necessary, though, in order to defeat the preliminary injunction and raise what is this substantial question of validity. Particularly in the facts on this case, we have a fairly narrow gap here. And the court, looking at the KSR decision, said, I believe that he said the motivation to combine or the reason to combine is that this is simply a combination. I'm reading from page A2 here. He says, quoting KSR, the combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results. What about the timeliness of the 099 appeal? Certainly. And as Judge Moore mentioned, well, essentially there are two points to bring up as to the timeliness of the 099 appeal that stand separately. The first, as Judge Moore mentioned, is the fact that on its face, Anderson's notice of appeal appealed not from the denial of the preliminary injunction, but he was appealing the denial of the motion for reconsideration. And Rule 3 of the Federal Rules of Appellate Procedure requires that the notice of appeal properly designate the order being appealed from. Here, a motion for reconsideration is an appeal by permission. Anderson has not yet presented a notice of appeal properly identifying the denial of the motion for preliminary injunction on the 099 patent as the order that is being appealed. But doesn't a motion for reconsideration subsume the question of the merits? I believe they're separate, Your Honor. Now, they're certainly related. Doesn't a motion for reconsideration stay the time for appeal? Yes, Your Honor. It does have that effect. Do we have the motion for reconsideration in our record here, the actual motion? The actual motion for reconsideration? It's not in the appendix, I don't believe. So I can't, I mean, if I, sometimes when you write a motion for reconsideration you refer to your original request? Certainly. I mean, there'd be a better argument for a subsumption as the presiding judge has suggested. But you say, we can get it off pacer, I guess. When was it filed, you know, the motion for reconsideration? Let's see. Let me put that in the docket. It had to be Anderson. But I assume that the appeal is not from the motion, but from the denial. Is that right? So even if the motion itself had referred to the underlying one, her denial was entirely based on the exclusion of improper evidence that was being offered. Yes, Your Honor. And so we already fundamentally have two different questions here. Separately, to bring up another point, even if the notice of appeal that Anderson filed on November 2nd were construed as properly referencing the denial of the 099 patent, it was still untimely. Now, as the Supreme Court noted in Tories v. Oakland Scavenger Company, the standards set forth in Rule 3 and 4 are jurisdictional in nature. They are requirements, and if the plaintiff fails to meet those requirements, it is not properly appealed, and there is no jurisdiction. Didn't the trial court clean up the defect? Well, first of all, we'd argue technically, according to the rules, there is no defect. It could have been cleaner, certainly. But the rules tie up the loose ends for us, so to speak. Now, the original motion for preliminary injunction was back in July of 2006. There was no written motion denying that order. However, 150 days later, which would have been in December 2006, The minute order becomes a written order? At that point, it becomes the final. It's deemed entered for purposes of appeal, and that starts the clock for the 30-day period in which they must appeal. Now, Anderson had filed a motion for reconsideration in the interim, and Rule 4 specifies that such a motion does, in fact, toll the time period in which it has to appeal. Now, that being said, the rule also specifies that that time period is only tolled until such point as the district court enters an order that disposes of, in this instance, the motion for reconsideration. So the question is, well, under the rules, when was that order entered for purposes of restarting that clock? And the rule specifies that if Rule 58, the Federal Rules of Civil Procedure, does not require a separate document, then the order is deemed entered once it is entered into the docket, and there is no separate written document required. Now, it's undisputed here that the district court did, in fact, enter into the docket, or caused to be entered into the docket, the minute order denying the motion for reconsideration on June 27. Now, that restarted the clock. Well, wasn't he intending to enter in a written order actually denying the PI? When they asked him, when opposing counsel asked him to enter in a written order because it hadn't been done, weren't they really focusing on the denial of the PI, or was their request entirely directed to the reconsideration motion? Well, I believe, ultimately... They both were oral, right? It's true. The denial of PI was oral, and the denial of motion for reconsideration were also. They were both initially oral. Yes, yes. And so when they asked him to clean up the record, and he admitted he needed to clean up the record, was their request focused on the reconsideration or on the denial? Well, I believe Anderson may be in a better position to answer what their intent was. I think the district court understood it to be that they were asking for a written order cleaning up the motion for reconsideration, and that, in fact, is what he entered on November 1st. Now, Your Honor, we'd argue that regardless, even if the court did intend to clean this up... I guess I'm not curious about what their intent is. I'm curious about what's manifested from their request. Where did they make the request? In the record, where did they make the request asking for a written order? Oh, I see. That was September 27th. But do you know where it is in the Appendix A something or other? Let's see. On the docket entry on A18, you can see Entry 97. I don't believe the text of that motion is actually in the Appendix. But Entry 97 is the motion for clarification of order or in the alternative amend notice of appeal. Now, moving to that point... You don't remember in that, I'm sure you don't, but you don't remember in that document whether they had specifically asked for a written order memorializing the oral dispensing of the denial motion as opposed to the reconsideration motion? You don't remember what that said? I wouldn't feel comfortable saying without reviewing the document myself first, Your Honor. I would point out that regardless of what happened, the rules do also specify and limit the ability of a judge to extend the time in which to file an appeal. Now, Rule 4A provides an opportunity for an extension, and we believe that this is properly characterized as an extension. It says that such a motion, and pardon me, this is Rule 4A-5, indicates that the district court may extend the time to file a notice of appeal if the party moves to do so no later than 30 days after the expiration of the original time frame. So essentially, they have a 60-day window in which to request their motion, and the rules specify that they must make that motion. The district court cannot do it on its own. Rule 26, you'll note, 26B also says, in essence, when we say 30 days to appeal, we really mean 30 days. The only exceptions can be made are those specified in Rule 4. And I imagine you would say, especially because this is jurisdictional, we don't have the ability to go in and fix the mistakes of Judge Benson, even if it was a mistake. Precisely. We can't fix it, and they should have objected to it or asked him for a further correction when it showed only motion for reconsideration in the decision. Yes, Your Honor. And, in fact, the text actually supports that interpretation, because you'll note 4A-4 also says that it can make that motion only upon a showing of good cause or excusable neglect. So, obviously, the drafters intended that provision to apply in those sorts of situations. Now, in addition, we'd say the underlying policy is benefited here, because the entire point of Rule 4 is to specify the time in which an appeal must and should be taken. Now, if a district court, even with the best of intentions, were always allowed to provide a new written order, simply memorializing an earlier order that started the clock, then, essentially, the district court would have complete and basically unfettered discretion to grant extensions using this backdoor. And we believe that that is not in accordance with the purpose of Rule 4. And, as such, we assert that the 099 patent is not properly on appeal. Anderson failed to properly provide a notice of appeal. And, again, coming back to the Supreme Court's decision in Torres, they, in fact, said, you know, we understand that the result in that particular case may seem harsh. But they specifically said this harshness is required by the statute. It's understandable that this often poses a trap for counsel, but this harshness is actually required. Your Honors, we respectfully request that this panel affirm the district court's decision denying a preliminary injunction on the 099 patent and on the 412 patent as well, as it did not abuse its discretion in determining that we raised below a substantial question of validity as to both the 099 patent and the 412 patent. Thank you, Mr. McGinn. Mr. Zenger, you gave me, what, three minutes? Thank you, sir. Judge Clevenger, to answer your question, the motion document, the motion, in the district court in Utah, you have to file a motion, a memo, and an order. Our motion for reconsideration, the motion paper itself is not in the appendix, but the memorandum is. And the memorandum expressly addresses the court's not improper oral decision on the motion for preliminary injunction and expressly asks that the court grant preliminary injunction on the 099. So I don't think there can be any doubt. That's in the appendix starting at page 473, and particularly at page A481, there is an express request that the court grant preliminary injunction on the 099 patent. So I don't think there can be any doubt that arguing the motion for summary. Counsel, wouldn't the motion for reconsideration always be a request that the court redo differently what they had previously done? I mean, what you're saying here seems to me to be, of course your motion says that. That's why I'm saying, of course it was subsumed, and so the court's ruling on the motion for reconsideration is de facto its ruling on the motion for preliminary injunction, and therefore everything was timely as we stated in our briefs. I want to go back to one issue that I wanted to make. You asked, sorry, one of you asked, I don't have my notes here, where in the patent does it show that there was extrusion? And counsel cited this Sixario patent. The Sixario patent says nothing, zero zip about tow bars. It talks about bumper assemblies that hook onto the cars and receive other things attached to it. This patent is not about bumper assemblies. It's not about the big thing into which tow bars stick. It's the tow bar itself. Say you can take from related arts. The idea of extrusion and automobile parts take from one and use for another part, is that really non-obvious? If it was obvious to a person of ordinary skill in the art, but there's no evidence in the record that it was obvious to a person of ordinary skill in the art. Diversitech offered no such evidence. It was devoid. So our appeal is twofold. The court below effectively defeated the presumption of validity by relying on a design patent that discusses none of the elements of the claim. And second, the court did an incomplete obviousness analysis. There is no discussion of the differences between the scope and content of the prior art and the elements of the patent. None. What did the court do? He said, if you look at McCoy, it looks like the patent documents. But also presented to the court were other embodiments that don't look anything like McCoy. And so the court looked at the shape of McCoy, not whether it taught extruding, machining, and cutting. Thank you very much. I think we're going to enjoin further argument on this case. Thank you. We'll take it under review.